UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMERICAN CASUALTY COMPANY<br>OF READING, PENNSYLVANIA | CIVIL ACTION |
| VERSUS | NUMBER 04-3270 |
| TENET HEALTHSYSTEM HOSPITALS,<br>INC. d/b/a MEADOWCREST HOSPITAL,<br>INC. | SECTION "L" (3) |

### ORDER & REASONS

Pending before the Court are the Plaintiff American Casualty Company of Reading, Pennsylvania's ("American Casualty") Motion for Summary Judgment (Rec. Doc. 26) and the Defendant Tenet Healthsystem Hospitals, Inc. d/b/a Meadowcrest Hospital, Inc.'s ("Meadowcrest") Motion for Summary Judgment (Rec. Doc. 27). The Court heard oral argument on these motions on July 26, 2006. For the following reasons, the Plaintiff's motion is GRANTED and the Defendant's motion is DENIED.

**I.    Background**

On December 25, 2000, there was an accident at Meadowcrest Hospital. A temporary nurse working at the hospital, Stephen Garcia, dropped a patient as he was being moved. The patient, Allan Tinoco, filed suit in Civil District Court for the Parish of Orleans, Louisiana against Nurse Garcia and his employer, Maxim Healthcare Services, Inc. ("Maxim"). On August 12, 2004, Meadowcrest paid $100,000 to settle the *Tinoco* action.

American Casualty filed the instant declaratory action against Meadowcrest on December 8, 2004. Both the Plaintiff and the Defendant provide professional liability insurance coverage

to Nurse Garcia.  The Plaintiff seeks a declaration that its policy is an "excess" insurance policy and that the Defendant's self-insurance program is Nurse Garcia's primary insurance.  The Plaintiff also seeks a declaration that it is not obligated to pay any portion of the *Tinoco* settlement given that the Defendant's self-insurance program provides up to $100,000 of primary coverage.

The Plaintiff issued Healthcare Providers Professional Liability Policy number HPG-0184282137 to Nurse Garcia, effective from June 23, 2000 to June 23, 2001.  The Plaintiff's policy contains the following clause:

> VIII.   Other Insurance and Risk Transfer Arrangements
>
> Any loss resulting from any claim insured under any other insurance policy or risk transfer instrument, including but not limited to, self-insured retentions, deductibles or other alternative arrangements, which applies to this loss, shall be paid first by those instruments, policies, or other arrangements.  This insurance will not serve as primary insurance where there is other applicable insurance.  It is the intent of this policy to apply only to loss which is more than the total limit of all deductibles, limits of liability, self-insured amounts or other valid and collectible insurance or risk transfer arrangements, whether primary, contributory, excess, contingent, or otherwise.  This insurance will not contribute with any other applicable insurance.

The Defendant is a qualified health care provider under the Louisiana Medical Malpractice Act ("LMMA"), La. Rev. Stat. Ann. § 40:1299.42 (2001).  Under the act, the Defendant provides primary coverage of up to $100,000 in liability damages resulting from malpractice committed by one its nurses within the scope of employment.  La. Rev. Stat. Ann. § 40:1299:42(B)(2).  Although Nurse Garcia was a temporary nurse directly employed by Maxim, the Louisiana Fourth Circuit Court of Appeal has held that Nurse Garcia was also an employee of the Defendant Meadowcrest.  *See Tinoco v. Meadowcrest*, 03-272 to 03-274 (La. App. 4 Cir. 9/17/03); 858 So.2d 99, 108-09.  Accordingly, Nurse Garcia is an additional insured covered by the Defendant's self-insurance program.  The Defendant provides coverage to Nurse Garcia

without any qualification concerning the potential effect of other insurance.

## II.     Law & Analysis

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  As the only issue in this case is the construction of insurance policies under Louisiana law, and the legal effect of that construction, summary judgment is appropriate.  *See NME Hosps., Inc. v. Am. Cas. Co. of Reading, Pa.*, No. 96-0998, 1996 WL 599468 (E.D. La. Oct. 17, 1996); *Goldman v. W. Geophysical Co.*, 04-1374 (La. App. 5 Cir. 5/31/05); 904 So.2d 796, 799.[1]

When two entities provide insurance coverage for the same risk, as in this case, a typical "other insurance" situation is presented and the Court must determine how the two coverages coordinate to pay for the loss.  *See Graves v. Traders & Gen. Ins. Co.*, 214 So.2d 116, 117 (La. 1968).  Under Louisiana law, the Court must determine the priority of the two coverages by attempting to give effect to any "other insurance" clauses.  *See id.*; *Truehart v. Blandon*, 884 F.2d 223, 226 n.7 (5th Cir. 1989).  Louisiana recognizes "three basic types of other insurance clauses:  (1) pro rata, (2) excess and (3) escape. . . .  Excess clauses provide that the coverage of the policy will be excess over other valid and collectible insurance so that the insurer will have no obligation to pay until the coverage of the other policy or policies has been exhausted."  *Citgo Petroleum Corp. v. Yeargin, Inc.*, 95-1574 (La. App. 3 Cir. 2/19/97); 690 So.2d 154, 167.

---

[1] In its Motion for Summary Judgment, the Defendant also argues that under La. Civ. Code Ann. art. 2320, it is not a joint tortfeasor and therefore is entitled to reimbursement from the Plaintiff of the $100,000 *Tinoco* settlement and associated costs and fees.  The only issue before the Court in this declaratory action is the proper coordination of coverage for Nurse Garcia, therefore the Court does not address the issue of reimbursement.

This is not the first time that the parties have litigated this issue. In *NME Hospitals, Inc. v. American Casualty Co. of Reading, Pa.*, No. 96-0998, 1996 WL 599468 (E.D. La. Oct. 17, 1996), *aff'd*, 132 F.3d 1454 (5th Cir. 1997), Judge Duval resolved a similar dispute between the same parties. In that case, the court found that the coverage provided by American Casualty was excess to the primary coverage provided by the Defendant for a different nurse. As the court stated in *NME Hospitals*,

> the 'other insurance' clause contained in Nurse Dow's American Casualty malpractice policy proves dispositive. The court looks to the 'other insurance' clause language to determine the insurance obligation of American Casualty in this instance. It is axiomatic that in Louisiana: an insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written.

*NME Hosps.*, 1996 WL 599468, at *2.

Although the "other insurance" clause in Nurse Garcia's American Casualty policy is slightly different than the language in Nurse Dow's American Casualty policy, it is nevertheless still "clear that if other funds are available from another listed source, including a self-insured, American Casualty is an excess insurer only." *NME Hosps.*, 1996 WL 599468, at *2. The Court finds nothing ambiguous about the terms of the other insurance clause contained in Nurse Garcia's policy.

The Defendant argues that the parties in this case provide "co-primary" coverage to Nurse Garcia, and therefore they should share the costs of the *Tinoco* settlement pro rata.

First, the Defendant seeks to distinguish the holding in *NME Hospitals* based on Nurse Garcia's temporary employment status. In *NME Hospitals*, Nurse Dow was an employee of the hospital when she obtained an excess policy from American Casualty. In this case, the

Defendant argues that since Nurse Garcia obtained insurance from the Plaintiff *prior* to being assigned to Meadowcrest Hospital, the Plaintiff's policy must be viewed as primary insurance. The Court is unpersuaded by the Defendant's argument. The mere fact that Nurse Garcia did not have primary coverage when he obtained coverage from the Plaintiff does not nullify the other insurance provision in the Plaintiff's policy.

Second, the Defendant argues that the Plaintiff's policy is not a "true" excess policy, and therefore it must be a primary policy obligated to share the costs of the *Tinoco* settlement. The Defendant mistakenly relies on cases in which both policies contain "other insurance" clauses. In such cases, if both clauses were given effect, neither policy would provide coverage. *See, e.g.*, *Perniciaro v. Liberty Mut. Ins. Co.*, 02-980, 825 So.2d 1221 (La. App. 4 Cir. 5/20/02). Therefore both clauses are usually held to be ineffective and the policies are required to share pro rata. In this case, however, the Defendant's self-insurance program does not include an other insurance provision. Therefore, the other insurance clause in the Plaintiff's policy must be given effect, regardless of the fact that the Plaintiff's policy is not a "true" excess policy. *See Truehart*, 884 F.2d at 226 n.7 ("Presumably, 'other insurance' clauses that do not conflict and thereby produce absurd gaps in coverage are not mutually repugnant."); *NME Hosps.*, 1996 WL 599468, at *3.[2]

---

[2] "[I]t is important to distinguish between policies that are true excess policies and those that are actually primary policies with "excess" other insurance clauses. A true excess policy is one that provides that the insurer is liable only for the excess above and beyond that which may be collected from the primary insurer. It is customary in such policies to include a requirement for underlying primary insurance for a certain amount and to list such other primary insurance within the excess policy. On the other hand an "excess" other insurance clause within a primary policy is considered a self-serving provision that attempts to make the insurer only secondarily liable if another unexhausted policy is available to cover claims." *Penton v. Hotho*, 601 So.2d 762, 765 n.3 (La. Ct. App. 1992).

**III.    Conclusion**

The *Tinoco* settlement did not exhaust the Defendant's primary coverage, therefore, the Plaintiff's excess coverage is not triggered in this case.  Accordingly, IT IS ORDERED that the Plaintiff's Motion for Summary Judgment is GRANTED, and the Defendant's Motion for Summary Judgment is DENIED.

New Orleans, Louisiana, this __12th__ day of __September__, 2006.

_____
UNITED STATES DISTRICT JUDGE